Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN DURLACHER,<br><br>    Plaintiff,<br><br>v.<br><br>PNM RESOURCES, INC., PATRICIA K. COLLAWN, VICKY A. BAILEY, NORMAN P. BECKER, E. RENAE CONLEY, ALAN J. FOHRER, SIDNEY M. GUTIERREZ, JAMES A. HUGHES, MAUREEN T. MULLARKEY, DONALD K. SCHWANZ, and BRUCE W. WILKINSON,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

Plaintiff Martin Durlacher ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## **NATURE OF THE ACTION**

1.   This is an action against PNM Resources, Inc. ("PNM" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

1

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of PNM by Avangrid, Inc. ("Avangrid") and NM Green Holdings, Inc., a wholly-owned subsidiary of Avangrid.

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as upon the closing of the Proposed Transaction, the combined company will conduct business in New York.

5.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.  Plaintiff is, and has been at all relevant times hereto, an owner of PNM's common stock.

7.  Defendant PNM, through its subsidiaries, engages in the energy and energy-related businesses in the United States. The Company is incorporated in New Mexico. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "PNM."

8. Defendant Patricia K. Collawn ("Collawn") is Chairman of the Board, President, and Chief Executive Officer of the Company.

9. Defendant Vicky A. Bailey ("Bailey") is a director of the Company.

10. Defendant Norman P. Becker ("Becker") is a director of the Company.

11. Defendant E. Renae Conley ("Conley") is a director of the Company.

12. Defendant Alan J. Fohrer ("Fohrer") is a director of the Company.

13. Defendant Sidney M. Gutierrez ("Gutierrez") is a director of the Company.

14. Defendant James A. Hughes ("Hughes") is a director of the Company.

15. Defendant Maureen T. Mullarkey ("Mullarkey") is a director of the Company.

16. Defendant Donald K. Schwanz ("Schwanz") is a director of the Company.

17. Defendant Bruce W. Wilkinson ("Wilkinson") is a director of the Company.

18. Defendants Collawn, Bailey, Becker, Conley, Fohrer, Gutierrez, Hughes, Mullarkey, Schwanz, and Wilkinson are collectively referred to herein as the "Individual Defendants."

19. Defendants PNM and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. On October 21, 2020, PNM issued a press release announcing that it had entered into a definitive agreement under which Avangrid will acquire all the outstanding shares of PNM for $50.30 in cash per share. The press release states, in pertinent part:

**AVANGRID and PNM Resources to Combine in Strategic Merger Transaction**

Strategic alignment in transition to clean energy and commitment to ESG strategy creates a leading U.S. regulated utility and renewable energy platform

NEWS PROVIDED BY
**PNM Resources, Inc.**
Oct 21, 2020, 03:00 ET

ALBUQUERQUE, N.M., Oct. 21, 2020 /PRNewswire/ --

- *Transaction merges two strategically aligned, premier companies to create a large, diversified national regulated utility and renewable energy platform with approximately $14 billion of rate base, more than 4 million electric and natural gas utility customers and more than 7.4 gigawatts of renewable energy assets*
- *PNM Resources shareholders to receive $50.30 cash per share of common stock held at closing of the transaction*
- *New combined company's largest shareholder will be Iberdrola, S.A., the third largest electricity company in the world and a leading global renewable energy company*
- *Combined company will have a strong financial profile, a solid investment grade balance sheet and robust cash flow profile, supported by the unparalleled global resources of Iberdrola*
- *Continued commitment to exit coal with the approved abandonment of the San Juan coal plant in 2022 and continued efforts to exit Four Corners coal plant prior to the expiration of ownership and coal supply agreements in 2031*

PNM Resources (NYSE: PNM) today announced with AVANGRID (NYSE: AGR) that they have entered into a definitive agreement under which AVANGRID will acquire all the outstanding shares of PNM Resources. The agreement, which has been unanimously approved by both companies' Boards of Directors, creates a leading U.S. regulated utility and renewable energy platform.

Under the terms of the agreement, PNM Resources shareholders will receive $50.30 in cash for each share of PNM Resources common stock held at closing, representing an equity value of approximately $4.3 billion.

*   *   *

**COMBINED COMPANY**
The combination creates a larger, more diversified regulated utility and renewable energy company with electric and gas utilities in complementary geographies. Regulated utility operations expand under the transaction and provide increased operational and regulatory diversification, serving more than 4 million electric and natural gas customers of 10 regulated utilities across New York, Connecticut, Maine, Massachusetts, New Mexico, and Texas. These combined operations are

4

supported by $14 billion of rate base, including more than 104,000 miles of electric transmission and distribution lines.

AVANGRID is the third largest wind operator in the U.S. and is a leading sustainable energy company with more than 7.4 gigawatts of installed wind and solar capacity. The strategic combination with PNM Resources also provides a platform for AVANGRID to expand its renewables business in the Southwest beyond its existing 1.9-gigawatt capacity wind projects in New Mexico and Texas and 200 megawatts of wind and solar capacity in Arizona. The scope and diversity of the combined business results in greater ability to invest in energy efficiency and new technologies.

The combined company's robust financial profile will provide flexibility to pursue near- and long-term growth opportunities, particularly in electric transmission and renewable energy. Through AVANGRID's parent company, Iberdrola, S.A., the combined company will have access to extensive financial resources to support this growth profile.

\*   \*   \*

**OTHER INFORMATION**
The combined company recognizes the value that local management's knowledge and expertise bring to serving the communities in which its businesses operate. PNM Resources operations will continue to be overseen locally and the current headquarters of the utilities in New Mexico and Texas will remain. Customers of Public Service Company of New Mexico (PNM) and Texas-New Mexico Power Company (TNMP), the wholly-owned regulated utility subsidiaries of PNM Resources, will benefit from the shared knowledge and technology across a global organization. The combined entity will have access to greater resources to continue providing safe and reliable service that supports an accelerated transition to clean energy and provides customer value.

Pat Vincent-Collawn will step down as Chairman, President and Chief Executive Officer upon closing of the transaction. Don Tarry, current Chief Financial Officer of PNM Resources, will oversee the continuing operations of PNM and TNMP. Two directors from the current PNM Resources Board will serve as independent directors of AVANGRID. One director from the current PNM Resources Board will also serve on the Board of the Avangrid Networks business.

PNM remains committed to exiting coal through the approved abandonment of San Juan Generating Station in 2022 and the continued efforts to exit its 200-megawatt ownership interest in the Four Corners Power Plant earlier than originally planned. PNM sees the potential for additional customer savings by exiting the plant sooner than the expiration of the ownership and coal supply agreements in 2031. An earlier exit from Four Corners also opens the door for the combined company to bring

additional renewable resources onto the grid in support of New Mexico's increasing renewable energy standards and 2045 carbon-free mandate.

The transaction is subject to PNM Resources shareholder approval, regulatory approvals from the New Mexico Public Regulation Commission, Public Utility Commission of Texas, Federal Energy Regulatory Commission, Department of Justice (Hart Scott-Rodino Clearance), Nuclear Regulatory Commission, Federal Communications Commission and Committee on Foreign Investment in the United States, and other customary closing conditions. The transaction is expected to close between October and December 2021.

**ADVISORS**
Evercore served as exclusive financial advisor and Troutman Pepper served as legal advisor to PNM Resources. BNP Paribas served as exclusive financial advisor and Latham & Watkins served as legal advisor to AVANGRID.

\*   \*   \*

**Background:**
PNM Resources (NYSE: PNM) is an energy holding company based in Albuquerque, N.M., with 2019 consolidated operating revenues of $1.5 billion. Through its regulated utilities, PNM and TNMP, PNM Resources has approximately 2,811 megawatts of generation capacity and provides electricity to approximately 790,000 homes and businesses in New Mexico and Texas. For more information, visit the company's website at www.PNMResources.com.

Avangrid, Inc. (NYSE: AGR) is a leading, sustainable energy company with approximately $35 billion in assets and operations in 24 states in the United States that holds the U.S. energy operations of its parent, Iberdrola. With headquarters in Orange, Connecticut, Avangrid has two primary lines of business: Avangrid Networks and Avangrid Renewables. Avangrid Networks owns eight electric and natural gas utilities, serving more than 3.3 million customers in New York and New England. Avangrid Renewables owns and operates a portfolio of renewable energy generation facilities across the United States.

21.     On January 5, 2021, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

22.     The Proxy Statement, which recommends that PNM shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the

6

Company's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Evercore Group L.L.C ("Evercore"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Evercore; and (iv) potential conflicts of interest involving Company insiders.

23. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) PNMR's Reasons for the Merger; (ii) Recommendation of the PNMR Board; (iii) Certain Unaudited Financial Forecasts Prepared by the Management of PNMR; and (iv) Opinion of PNMR's Financial Advisor.

24. Unless and until the material misstatements and omissions (referenced below) are remedied before the February 12, 2021 shareholder vote on the Proposed Transaction, PNM shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning the Company's Financial Projections

25. The Proxy Statement omits material information concerning the Company's financial projections.

26. The Proxy Statement provides that, in connection with the evaluation of a possible transaction involving PNM, the Company provided Avangrid and the Board with certain non-public, unaudited financial forecasts regarding PNM (the "Forecasts"), which were prepared by PNM management and provided to Evercore in connection with its fairness opinion.

27. The Proxy Statement provides a purported summary of the Forecasts.

28. The Proxy Statement, however, fails to disclose the following concerning the Forecasts: (1) all line items underlying (i) Operating Income Excluding Regulatory Disallowances, (ii) Ongoing Net Income, (iii) Ongoing EPS, and (iv) If Converted Ongoing EPS; and (2) a

7

reconciliation of all non-GAAP to GAAP financial metrics.

29. When a company discloses non-GAAP financial metrics in a Proxy Statement, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

30. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31. The above-referenced omitted information, if disclosed, would significantly alter

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Jan. 15, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Evercore's Analyses

32. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Evercore.

33. The Proxy Statement fails to disclose the following concerning Evercore's "*Discounted Cash Flow Analysis*": (1) the standalone, unlevered, after-tax free cash flows PNM was expected to generate over the period from October 20, 2020 through December 31, 2024, and all underlying line items; (2) the ranges of terminal values for PNM; (3) the individual inputs and assumptions underlying the (i) perpetuity growth rates ranging from 1.50% to 2.00%, (ii) price to earnings-per-share multiples ranging from 18.00x to 21.00x, (iii) enterprise value to earnings before interest, tax, depreciation and amortization (taking into account regulatory disallowances and gas pension costs) multiples ranging from 11.00x to 13.00x, (iv) discount rate of 5.5%, and (v) discount rates ranging from 5.0% to 6.0%; (4) PNM's net debt as of September 30, 2020; and (5) the fully diluted outstanding shares of PNM common stock as of September 30, 2020.

34. The Proxy Statement fails to disclose the following concerning Evercore's "*Selected Public Company Trading Analysis*" and "*Precedent Transaction Analysis*": (1) PNM's net debt as of September 30, 2020; and (2) the fully diluted outstanding shares of PNM common stock as of September 30, 2020.

35. With respect to Evercore's "*Analysts' Price Targets*" analysis, the Proxy Statement fails to disclose: (1) the individual price targets observed by Evercore in its analysis; and (2) the sources thereof.

36. The valuation methods, underlying assumptions, and key inputs used by Evercore in rendering its purported fairness opinion must be fairly disclosed to PNM shareholders. The description of Evercore's fairness opinion and analyses, however, fails to include key inputs

and assumptions underlying those analyses. Without the information described above, PNM shareholders are unable to fully understand Evercore's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Evercore

37. The Proxy Statement omits material information concerning potential conflicts of interest involving Evercore.

38. The Proxy Statement provides that, "[d]uring the two-year period prior to the date of its written opinion, Evercore and its affiliates provided financial advisory services to PNM[], for which Evercore received fees of $1.2 million."

39. The Proxy Statement, however, fails to disclose the timing and nature of the services Evercore and its affiliates provided to PNM during the two-year period prior to the date of its fairness opinion, including the amount of compensation Evercore and its affiliates received from PNM for providing each service.

40. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

41. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

42. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

43. The October 21, 2020 press release announcing the Proposed Transaction provides that Company insiders will serve in positions at the combined company, stating in pertinent part:

> Don Tarry, current Chief Financial Officer of PNM Resources, will oversee the continuing operations of PNM and TNMP. Two directors from the current PNM Resources Board will serve as independent directors of AVANGRID. One director from the current PNM Resources Board will also serve on the Board of the Avangrid Networks business.

44. The Proxy Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

45. The Proxy Statement further fails to adequately disclose the extent to which Avangrid's proposals or indications of interest mentioned management retention or equity participation in the combined company.

46. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

47. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

50. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

51. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

52. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

13

or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

58. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 15, 2021                         Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
          zhalper@halpersadeh.com

*Counsel for Plaintiff*